**NATIONAL LABOR RELATIONS BOARD**
**v. KANMAK MILLS, Inc. et al.**

No. 10555.

United States Court of Appeals
Third Circuit.

Argued Nov. 17, 1952.

Decided Dec. 17, 1952.

Arnold Ordman, George J. Bott, Gen. Counsel, David P. Findling, Associate Gen. Counsel, A. Norman Somers, Asst. Gen. Counsel, and Margaret M. Farmer, Attys., National Labor Relations Board, Washington, D. C., for petitioner.

Geoffrey J. Cuniff, Emanuel G. Weiss, Philadelphia Pa., for respondents.

Before McLAUGHLIN, KALODNER and STALEY, Circuit Judges.

McLAUGHLIN, Circuit Judge.

The Labor Board here petitions for enforcement of its order of February 28, 1951 against respondents. It is conceded that the latter comprise an integrated enterprise. No jurisdictional question is presented.

The first finding by the Board is "* * * that the Respondents interfered with, restrained and coerced their employees in violation of Section 8(a) (1) of the Act." 61 Stat. 140 (1947), 29 U.S.C.A. § 158(a) (1). This is based on actions and conduct fairly attributable to the respondents during efforts to unionize their plant. There is evidence in the record that the Kulpmont production manager interrogated employees concerning their union activities; that he warned two of them the plant would close if the union came in; that he urged one of the above mentioned employees to abandon support of the union and called the other a "damned fool" for assisting in obtaining signatures to union application cards; that he asked another employee why the employees wanted a union and warned her that the sewing floor at Kulpmont, where she worked, could be closed down and used for storage space. Regarding Kanmak, there was testimony that a foreman, after he had ascertained from an employee that the latter had joined the union, told him that he was "worried" that "* * * if the union gets in, the mill is going to close down." It was testified that the superintendent of the Kanmak dye house questioned another worker as to his union membership and, after the employee had stated he was a union member, told him that if the union got in respondents would close the plant. That same employee, according to testimony, suggested that the union would obtain a raise in pay for the employees and the superintendent answered "* * * if the union gets in you won't have a full day's work; you will probably be sent home."

Respondents argue that the statements of the production supervisor and of the dye house superintendent merely repeat "* * idle rumors unsponsored and unencouraged by management." At best this is quite unconvincing. The testimony furnished substantial support for the Board's above mentioned finding of a Section 8(a) (1) violation by the respondents. See H. J.

Heinz Co. v. NLRB, 1941, 311 U.S. 514, 518, 520, 61 S.Ct. 320, 85 L.Ed. 309; NLRB v. Electric City Dyeing Co., 3 Cir., 1950, 178 F.2d 980, 981; NLRB v. New Era Die Co., Inc., 3 Cir., 1941, 118 F.2d 500, 503.

The Board also found that respondents had violated the Act by refusing to call employee Florence Orlando to work in May 1949.[1] There was evidence that the refusal was induced by respondents' attitude towards the employee because of her union membership and activity. Respondents state that the management was unaware of her participation in union affairs and that she was not reemployed because she was not considered a good worker. There is sufficient proof to the contrary on both these points to justify the Board in finding a violation under Section 8(a) (3) and (1).

■ In its order the Board computed this employee's back pay on calendar quarters rather than on the entire period of discrimination considered as a unit. This

follows the practice it initiated in F. W. Woolworth Co., 90 N.L.R.B. 289, 291 (1950).[2] It is the result of the cumulative experience of many years by the Board in endeavoring to effectuate the statutory policy encouraging reinstatement of discriminatorily discharged employees. It is an expert effort to bring about " * * * a restoration of the situation, as nearly as possible, to that which would have obtained but for the illegal discrimination." Phelps Dodge Corp. v. NLRB, 1941, 313 U.S. 177, 194, 61 S.Ct. 845, 852, 85 L.Ed. 1271. Ordinarily speaking this is a policy question for the Board's decision and it seems to us that, under the particular facts before us, the Board's conclusion should not be disturbed. Cf. NLRB v. Seven-Up Bottling Co., 5 Cir., 1952, 196 F.2d 424, 427.

■ The third violation found by the Board arises out of an incident in connection with the application for reinstatement of Lorraine Petrovich. The original complaint charged that she had been refused

2. The Board said in that case:

"We have noted in numerous cases that employees, after having been unemployed for a lengthy period following their discriminatory discharges, have succeeded in obtaining employment at higher wages than they would have earned in their original employments. This, under the Board's previous form of back pay order, resulted in the progressive reduction or complete liquidation of back pay due.

"The deleterious effect upon the companion remedy of reinstatement has been twofold. Some employers, on the one hand, have deliberately refrained from offering reinstatement, knowing that the greater the delay, the greater would be the reduction in back pay liability. Thus, a recalcitrant employer may continue to profit by excluding union adherents from his enterprise. Employees, on the other hand, faced with the prospect of steadily diminishing back pay, have frequently countered by waiving their right to reinstatement in order to toll the running

of back pay and preserve the amount then owing. Upon analysis of a substantial number of cases involving such action, we have found the economic motivation and compulsion upon the employee not difficult to discern. Unemployment or employment at lesser wages may have resulted in the exhaustion of the employee's savings, his incurrence of debts, and even in deprivation of the necessities of life. Our observation on this score accords with the view of the United States Supreme Court which, in treating this general problem, recognized that the worker is 'not likely to have sufficient resources' to sustain the necessary 'minimum standard of living necessary for health, efficiency, and general well-being' during such periods. The consequent desire of the victim of discrimination to recoup the maximum amount possible in order to offset such losses, even if this must be accomplished at the price of relinquishing the right to be returned to his former position, may readily be anticipated. The Board has viewed these results with concern because we, as well as the courts of review, have long regarded the remedy of reinstatement as one of the most effective measures expressly provided by the Act for expunging the effects of unfair labor practices and maintaining industrial peace."

reinstatement because of her union activity. At the trial respondents' general manager, testifying in respondents' case, stated that while he was interviewing Miss Petrovich in connection with her reemployment he said to her, " * * * 'assuming that we bring you back, would you retract those charges?' And she said, 'Yes, I'd be very glad to do so.' Then I said, 'Okay; if you would' and we are in a position to bring them back, 'would you write a letter to that effect?' And she said, 'Yes' she would." Because of this and other testimony by the manager along the same line counsel for the Board at the end of the trial moved to amend this part of the complaint by adding the alternative charge that Miss Petrovich had been denied reinstatement due to the fact that she had filed charges against Kanmak. The amendment was objected to on behalf of the respondents and decision was reserved. Thereafter the examiner in his report found that there had been no discrimination against Miss Petrovich within the meaning of the original charge. He also held that there had been a violation of Section 8(a) (4) by the respondents as charged by the amendment. Respondents meanwhile had moved that the hearing be reopened to permit further testimony on the new charge in the event the examiner permitted the complaint to be amended so as to include it. The examiner denied this request in his report and the respondents excepted to that ruling. The Board in its decision upheld the examiner on this point. That action was erroneous.

It is true that the Board and the examiner relied on testimony of respondents' witness, the manager. It is further true that respondents at no time made an offer of specific testimony which they intended to produce to show they were not guilty of conditioning the rehiring of Miss Petrovich on her retraction of charges against them. But those reasons cannot foreclose respondents' right under the Administrative Procedure Act, Section 5(a) (b), 5 U.S. C.A. § 1004, and generally, to be given timely notice of the charge and to have an opportunity to contest it. Section 8(a) (4), alleged in the amendment to have been violated by respondents, specifically concerns discharges based on the employee's filing charges against the employer with the Board or testifying in Board proceedings. It was entirely new to the Petrovich claim. Respondents were entitled to answer it even though its foundation was the evidence of their own witness which was given in the course of his testimony with reference to the original charge.

■ As their final point respondents urge that the order of the Board violates Section 5(c) of the Administrative Procedure Act, 5 U.S.C.A. § 1004(c).

The pertinent part of that section reads:

" * * * No officer, employee, or agent engaged in the performance of investigative or prosecuting functions for any agency in any case shall, in that or a factually related case, participate or advise in the decision, recommended decision, or agency review pursuant to section 1007 of this title except as witness or counsel in public proceedings."

The contention is that the participation in the trial of this matter by the law clerk of the chairman of the Board had commingled the prosecuting and decisional functions of the Board contrary to the statute.

Under the Board's "training program for Board legal assistants", Mr. Christopher, the assistant in question, had been detached from his duties with the Board and was completely under the direction of the general counsel during the trial of this case. The sole purpose was to give him the rounded out experience which would enable him to render better service in his work with the Board. There is not the slightest inference fairly permissible from this record that Christopher had any connection with the decisional action of the Board in this matter, and there is no contention that he was involved in a factually related case or that there was such a case. Cf. NLRB v. United Hoisting Co., 3 Cir., 1952, 198 F.2d 465, 469.

A decree will be entered enforcing that part of the Board's order dealing with the Section 8(a) (1) violation concerning the interrogation of employees combined with

546

warnings that the plant would be closed in the event of its unionization and with the Section 8(a) (3) and (1) violation relating to the refusal to reinstate Florence Orlando.

That part of the order of the Board regarding the 8(a) (4) and (1) violation of the Act found against respondents in connection with the reinstatement of Lorraine Petrovich will be reversed and remanded to the Board for a hearing on the merits of that alleged violation.

A form of decree covering the above to be submitted by counsel.