PARAMOUNT CAP MANUFACTURING COMPANY, Petitioner,

v.

NATIONAL LABOR RELATIONS BOARD, Respondent.

No. 15985.

United States Court of Appeals Eighth Circuit.

Oct. 24, 1958.

Rehearing Denied Nov. 17, 1958.

John R. Stockham, St. Louis, Mo. (Stockham, Roth, Buder & Martin, St. Louis, Mo., were with him on the brief), for petitioner.

Morris A. Solomon, Atty., National Labor Relations Board, Washington, D. C. (Jerome D. Fenton, Gen. Counsel, Thomas J. McDermott, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, and Frederick U. Reel, Atty., National Labor Relations Board,

Washington, D. C., were with him on the brief), for respondent.

Before GARDNER, Chief Judge, and VOGEL and MATTHES, Circuit Judges.

GARDNER, Chief Judge.

This matter is before us on petition to review and set aside an order of the National Labor Relations Board finding the Paramount Cap Manufacturing Company guilty of certain unfair labor practices in that it failed and refused to recall, or employ, or reinstate employees Mary Lorene Carter and Seymour Carter because of their alleged Union activities, and upon the cross-petition of respondent for decree of enforcement of said order.

The Paramount Cap Manufacturing Company is a corporation engaged in the manufacture of various kinds of sport and work caps at Bourbon, Missouri. At the times here in question it was employing between 120 and 130 employees at its Bourbon plant. The company was managed and operated as a family concern, Simon Rubenstein being president, his brother William Rubenstein being secretary-treasurer, and William's son, Norman Rubenstein, being vice-president and general manager.

About the second week of May, 1955, the United Hatters, Cap & Millinery Workers International Union, AFL–CIO, hereinafter called the Union, began a campaign to organize the Company's employees at its Bourbon plant, and later in May of that year, the company's vice-president, Norman Rubenstein, learned of this campaign from certain employees in the plant. Following this campaign the Union petitioned to be certified as the employees' bargaining representative, following which the National Labor Relations Board conducted an election to determine the employees' wishes. The Union lost the election and it then filed objections, alleging that the Company engaged in conduct which affected the result of the election. Upon a hearing on these objections the Board found that certain statements made by vice-president Norman Rubenstein had interfered with the employees' free choice in the election and thereupon the Board set aside the election and directed that a new election be held. However, a second election was never held because the Union withdrew its petition for certification. In the meantime, on July 30th, 1956, charges initiating the present unfair labor practices proceedings were filed with the Board, following which, and on October 9, 1956, the complaint herein was issued and served. The Company answered, admitting the commerce allegation of the complaint, and admitted that the Union is a labor organization, but denied the commission of any unfair labor practices. On hearing the Trial Examiner found the issues against the Company and specifically found that it had engaged in unfair labor practices in refusing to recall, or employ, or reinstate employees Mary Lorene Carter and Seymour Carter because of their Union activities. The Board adopted and approved the Trial Examiner's findings and thereupon entered its usual formal cease and desist order, which it is here seeking to have enforced, and which the Company seeks to have set aside.

The Company seeks to have the Board's order and decision set aside on substantially the following grounds: (1) The National Labor Relations Board and the Trial Examiner erred in giving independent and controlling weight to event in case No. 14-RC-2805 which occurred more than six months prior to the filing of the charge in the instant case; (2) the Trial Examiner and the Board erred in excluding certain relevant and material evidence; (3) the Trial Examiner and the Board erred in resolving alleged conflicts of credibility in favor of Lorene Carter and Seymour Carter and against the witnesses for the Company; (4) the Board and the Trial Examiner completely ignored the established practice of the Company with respect to recalls; (5) the Trial Examiner's Intermediate Report and the Board's Decision and Order are at variance with the Complaint; (6) the Board and the Trial Examiner erred in taking judicial notice of the transcript in Case No. 14-RC-2805.

At the hearing held contesting the fairness of the election both parties were represented, introduced evidence and examined and cross-examined witnesses. On July 27, 1956, the Union filed the charges forming the basis of the present controversy. At the hearing on the objections to the fairness of the election evidence was introduced as to certain statements and actions made by representatives of the Company, particularly Norman Rubenstein, indicating hostility toward the Union. Without detailing this evidence it is enough to say that it was found sufficient in character to invalidate the election. Some ten months subsequent to the election the present charges were filed.

During the course of the hearing the General Counsel requested the Board to take judicial notice of the record in the election contest case. This was objected to by counsel for the Company on various grounds but not on the specific ground that the events in the election contest case occurred more than six months before the filing of the charges in the instant case. Section 10(b) of the Labor Management Relations Act of 1947 (29 U.S.C.A. § 160(b)) provides in part that:

"* * * no complaint shall issue based upon any unfair labor practice occurring more than six months prior to the filing of the charge with the Board and the service of a copy thereof upon the person against whom such charge is made, * * *."

■■ The complaint in the instant case did not issue until some ten months subsequent to the unfair labor practices forming the basis for setting aside the election and the charges of unfair labor practices here are based upon the discriminatory refusal to reemploy certain named employees. The quoted statute contains no inhibition against the filing of such complaint and the issues tried and determined were those contained in the complaint and not those occurring prior to the election. The request that the Board take judicial notice of the proceedings and the record as made in the election contest case was limited to the purpose of showing background evidence in the case and the Trial Examiner and the Board specifically recite that it was considered for that purpose only. The statute is in the nature of a statute of limitations and not a statute purporting to affect the rules of evidence. The statements made by the Company's representatives, even though made at a time more than six months before the hearing in the present case, were admissible for the purpose of establishing a state of mind. Hostility toward the Union was not in itself an unfair labor practice and a presumption that such state of mind once proven was presumed to continue did not shift the burden of proving the alleged unfair labor practice but was proper background evidence in this case. The lapse of more than six months did not affect the admissibility of this evidence though it may have affected its weight. The Board, in referring to the contention that this evidence was not admissible, among other things in its decision said inter alia:

"As the Board has consistently held, the Section 10(b) proviso was enacted as a statute of limitations and not a rule of evidence. Accordingly, although the Board may not in making unfair labor practice findings give independent and controlling weight to events occurring more than 6 months before the filing and service of the operative charge, evidence as to such events is nevertheless admissible, and may be considered as background to explain ambiguous and equivocal conduct, including supplying the real reason where an untruthful reason is given for conduct within the 6 month period. As the reasons given for the refusal to reemploy the Carters within the 6 month period are not entitled to credence and are therefore clearly untruthful defenses or pretexts, leaving the real reason for such refusal unexplained by events occurring within the 6 month period, we find that consideration of the background evidence for the purpose

of seeking an explanation is warranted here."

■ We think the Board properly took judicial notice of this testimony for the limited purpose for which it was offered. National Labor Relations Board v. Brown & Root, Inc., 8 Cir., 203 F.2d 139; National Labor Relations Board v. General Shoe Corp., 6 Cir., 192 F.2d 504; National Labor Relations Board v. Clausen, 3 Cir., 188 F.2d 439; Superior Engraving Co. v. National Labor Relations Board, 7 Cir., 183 F.2d 783. As said by the Supreme Court in Federal Trade Commission v. Cement Institute, 333 U.S. 683, 68 S.Ct. 793, 805, 92 L.Ed. 1010:

"* * * the established judicial rule of evidence that testimony of prior or subsequent transactions, which for some reason are barred from forming the basis for a suit, may nevertheless be introduced if it tends reasonably to show the purpose and character of the particular transactions under scrutiny."

■ It is argued that the fact that the Board scheduled another election subsequent to the one it had set aside indicates that in the opinion of the Board the hostility of the Company toward the Union no longer existed. There is nothing in the record to indicate that the Board had any further knowledge on this question than that which may be inferred from the testimony heard at the election contest. But it must be borne in mind that the Board which ordered the second election is the same Board determining the issues in the present controversy and there is no inconsistency between the Board's ordering an election and the finding that the Company was hostile toward the Union.

It is urged that the Trial Examiner erred in certain rulings as to the admissibility of evidence. We have carefully examined the record as to these various rulings and are of the view that these rulings did not involve the admissibility of any substantial evidence. We think the rulings were correct, but in any event could not have been prejudicial.

■■ It is also argued that the Trial Examiner and the Board erred in resolving conflicts in credibility in favor of witnesses for the Union and against witnesses for the Company. The question of the credibility of witnesses and the weight to be given their testimony was certainly one for the trier of facts and there is no controlling evidence in the record indicating that there was error in resolving this conflict in favor of the Union and against the Company. The controlling issue before the Board was whether the Carters' Union activities caused or contributed to the Company's refusal to rehire them. The Carters were very active on behalf of the Union. Although job openings at the Company's plant were available and the Carters were qualified they were not employed, although others over whom, under the practice of the Company, they had prior rights were employed. The findings of the Trial Examiner, which were approved by the Board, are sustained on the record as a whole.

■■ It is finally argued that the Trial Examiner and the Board erred in taking judicial notice of the proceedings had in the election contest case as evidenced by the transcript. As has been heretofore observed, both parties to the present proceeding were parties to that proceeding. Each side called and examined witnesses, and counsel for each side cross-examined witnesses of the opposing side. This contention is directly answered by this court in Kithcart v. Metropolitan Life Ins. Co., 8 Cir., 88 F.2d 407, 411, where it is said:

"* * * we think the court may take judicial notice of its own records of prior interrelated litigation between the same parties."

See also, United States v. Pink, 315 U.S. 203, 62 S.Ct. 552, 86 L.Ed. 796 and National Fire Ins. Co. of Hartford, Conn. v. Thompson, 281 U.S. 331, 50 S.Ct. 288, 74 L.Ed. 881. The same rule is applicable to administrative agencies performing quasi-judicial functions. United States v. Pierce Auto Freight Lines, 327 U.S. 515, 66 S.Ct. 687, 90 L.Ed. 821;

**114**

Market Street R. Co. v. Railroad Comm., 324 U.S. 548, 65 S.Ct. 770, 89 L.Ed. 1171; National Labor Relations Board v. Reed & Prince Mfg. Co., 1 Cir., 205 F.2d 131.

We have considered all other contentions of the Company and are of the view that they are without merit and on consideration of the record as a whole we think the decision of the Board on all controverted issues is sustained by abundant evidence. Enforcement of the cease and desist order as entered by the Board will therefore be granted.