PUERTO RICO LABOR RELATIONS BOARD, Petitioner, *v.* CLUB
NÁUTICO DE SAN JUAN, Respondent.

No. O-68-127.     Decided June 3, 1969.

*Rafael A. Rivera Cruz, Solicitor General, Celia Canales González, Marta Ramírez Vera,* and *José E. Rodríguez Rosaly* for petitioner. *José A. Suro, Ángel A. García, Juan R. Torruella, Antonio J. Amadeo,* and *José E. Amadeo* for respondent.

First Division composed of Mr. Justice Pérez Pimentel, as Chief Judge of Division, Mr. Justice Blanco Lugo, Mr. Justice Rigau, and Mr. Justice Ramírez Bages.

MR. JUSTICE RAMÍREZ BAGES delivered the opinion of the Court.

In view of what we state below we conclude that the order from the Labor Relations Board of April 3, 1968, directed against respondent Club Náutico de San Juan,

should be enforced on the terms which we indicate later on.

The dispute in this case arises in the way and manner we relate below.

On the basis of a charge filed by the Unión de Trabajadores de la Industria Gastronómica, hereinafter called the Union, the Board, petitioner herein, issued a complaint charging respondent of having incurred in unfair labor practices, according to the provisions of § 8, subsection 1, paragraphs (a) and (c) of the Labor Relations Act, hereinafter called the Act (29 L.P.R.A. § 69(1) (a) and (c)).[1] It was alleged that said practices consisted in discharging and discriminating against six employees "for their union activities in favor of the Union." The allegations of the complaint having been denied and after alleging the defenses of discharge for indiscipline acts in some cases and for layoffs due to adverse situations in others, permission was obtained to amend the complaint when the presentation of evidence was finished, with respondent's objection, in order to charge the latter with the unfair labor practice of interfering with the rights of its employees guaranteed by § 4 of the aforesaid Act. (29 L.P.R.A. § 65.)

---

[1] Section 69(1)(a) and (c) of the Labor Relations Act reads as follows:
"(1) It shall be an unfair labor practice for an employer acting individually or in concert with others:
"(a) To interfere with, restrain or exercise coercion upon, or to attempt to interfere with, restrain or exercise coercion upon his employees in the exercise of the rights guaranteed in section 65 of this title.
".             .        .        .        .        .        .        .
"(c) To encourage, discourage or attempt to encourage or discourage membership in any labor organization by discrimination in regard to hiring, firing, or in connection with the tenure or other terms or conditions of employment, including a lockout; Provided, That nothing herein contained prohibits an employer from making an all-union shop contract or a maintenance of membership agreement with any labor organization that has not been established, maintained or assisted by any action defined in this subchapter as an unfair labor practice, if such labor organization represents a majority of the employees in an appropriate unit with authority for collective bargaining."

The Trial Examiner concluded that the respondent interfered and restrained its employees in the exercise of their rights under § 4 of the Act.[2] And that in violation of the provisions of § 8(1)(a) of the Act, it had discharged the six employees for being engaged, on the authority of the Labor Relations Act, in concerted activities for the purpose of mutual aid and protection.

In its order of April 3, 1968, the Board adopted the finding of the Trial Examiner amending it in order to conclude that for the discharges in question, respondent violated paragraphs (a) and (c) of § 8(1) of the Act. Respondent, its officers, agents, successors, and assigns, were ordered to cease and desist from said violations and it was ordered to reinstate the six employees in their positions and to compensate them for the loss of income which they would have suffered until the date of their reemployment.

We examine below respondent's nine assignment of errors.

"1. It was improper of the Trial Examiner, and of the Board in approving his report, to refer under what said Trial Examiner denominated as 'Background Evidence' to evidence which was not presented during the proceeding, of which evidence this party was not advised or informed that judicial notice was going to be taken and that, therefore, there has been no occasion to object to, contradict, explain, or clarify same, or in some way to defend itself therefrom."

The evidence to which this assignment refers is the record of a certification proceeding in which respondent was a party, where respondent's attitude is qualified by the Trial Examiner as antiunion. It sustains that this practice is adversely

---

[2] Section 4 of said Act provides the following:

"Employees have, among others, the right of self-organization; to form, join or assist labor organizations; to bargain collectively through representatives of their own choosing; and to engage in concerted activities for the purpose of bargaining collectively or for other mutual aid and protection."

criticized in the Anno. 18 A.L.R.2d 552 and in *United States* v. *Pierce Auto Freight Lines*, 327 U.S. 515 (1946).

■ The record shows that the records of the cases to which the Trial Examiner referred in his "Background Evidence" were admitted in evidence as Exhibits J2 and J3, judicial notice having been taken in Exhibit J2 of other cases to which the Trial Examiner referred, with respondent's consent in the case of Exhibit J2 and without its objection in the other.

Being thus advised that notice of the facts established in these cases would be taken, respondent was placed in a position to present evidence which it would deem pertinent, which it failed to do.

■ Contrary to what respondent alleges, *Pierce, supra*, holds that "the mere fact that the determining body has looked beyond the record proper does not invalidate its action unless substantial prejudice is shown to result." Respondent has not indicated to us whether it has suffered any prejudice for the paragraph objected to in the Trial Examiner's report, upon which in fact the decision of said officer is not based.

■ *Pierce, supra*, was cited with approval in *Paramount Cap Mfg. Co.* v. *National Labor Rel. Bd.*, 260 F.2d 109. In this case of unfair labor practice, the National Board took judicial notice of a certification proceeding in which the same parties were involved. It was decided that the Board could take judicial notice of its own records related to prior litigation, interrelated, between the same parties.[3] In *Paramount, supra*, as in the case at bar, the record was used as background evidence of the hostile attitude of the employer towards the union.[4]

---

[3] See *Pittsburgh Plate Glass Co.* v. *N.L.R.B.*, 313 U.S. 146, 157–158 (1941).

[4] What has been objected by some courts is that the administrative tribunal based its decision on facts obtained from other cases pending or decided by the same, even though it appears that the parties were the same in the proceedings. See, 18 A.L.R.2d 552, 581.

"2. It was improper of the Trial Examiner and of the Board in adopting his report, to refer and use in its Findings of Fact the testimony of Miguel Angel Ramos, when respondent had no opportunity to cross-examine said witness because the Board was not able to present him for such purpose."

Respondent alleges that it had no opportunity to cross-examine that witness "because the latter could not be found by the Board."

■ The Board maintains that witness Ramos was available during the hearing, but that respondent reserved its turn to cross-examine for the next meeting; that if the witness was not cross-examined it was because respondent never bothered to make a request to that effect. It is argued, also, that said omission was not proved to be prejudicial, since the witness' testimony is supported or corroborated by another evidence in the record.

*State* v. *Rouse,* 135 S.E. 641 (S.C. 1926), is a case similar to the one at bar. In this case it was decided that the prosecuting attorney having requested that the cross-examination of a witness be postponed, if the defense at no moment thereafter claimed its right to cross-examine him or reminded the judge that the witness had not been cross-examined, it had waived its right to cross-examine the witness by failing to make the request timely. See, *State* v. *Johnson,* 152 S.E.2d 669 (S.C. 1967); 5 Wigmore, Evidence, § 1371.

3–7. Assignments 3 through 7, inclusive, are based on the decision of admitting an amendment to the complaint after the evidence had been presented, notwithstanding respondent's objection, for the purpose of including an additional charge of unfair labor practice.

■ Respondent alleges that it was not served previous notice of the charge of having violated the provisions of § 4 of the Act until the amendment of the complaint was admitted when the presentation of evidence concluded, or that it had any indication during the proceeding that the com-

plaint was to be amended in order to include said charge, for which reason it had right to infer that the charges filed against it were the ones contained in the original complaint. In support of its contention it cites the cases of *N.L.R.B.* v. *Johnson,* 322 F.2d 216 (6th Cir. 1963) ; *National Labor Relations Board* v. *Kanmak Mills,* 200 F.2d 542 (3d Cir. 1952) ; *Northeastern Indiana Building and Const. Tr. Coun.* v. *N.L.R.B.,* 352 F.2d 696 (D.C. Cir. 1965) ; and *N.L.R.B.* v. *International Hod Carriers', Etc., Union,* 287 F.2d 605 (9th Cir. 1961). We do not agree.

The record shows that the amendment was based on the evidence brought by respondent's witness Ruemmele. After admitting the amendment, the Trial Examiner offered respondent the opportunity to explain its witness' testimony, but respondent stated that it believed "that the proceeding shall not be in such a manner . . . we are not interested in an amendment of that nature."

*Johnson, supra,* is distinguishable because in that case the court held that the Trial Examiner having assured the employer that the evidence about questions not alleged in the complaint would be admitted as background only, the Board could not find proved another violation to which the allegations did not refer, nor was that other violation a litigated question, but that if it had been, the amendment to conform the complaint to the evidence presented would have lied.

In *Kanmak, supra,* it was said to be an error, under circumstances similar to those of the present case, to deny the employer its request that the hearing be reopened in order to allow additional testimony about the new charge. In the present case, precisely, respondent was offered such opportunity and it declined.

*Northeastern, supra,* does not support respondent's contention either, since it is very similar to *Kanmak, supra. International, supra,* presents a situation completely different to the present case.

On the other hand, § 9(1)(a) of the Act (29 L.P.R.A. § 70(1)(a),[5] supports the Board's decision, particularly when the latter offered respondent the opportunity to explain or to clarify its witness' testimony in which the charge filed by way of the amendment to the complaint was based and respondent in effect did not make use of it.

■ It has been consistently held that the Trial Examiner and the Board have ample discretion to allow amendments to the complaint in order to conform it to the evidence presented. *N.L.R.B.* v. *William J. Burns International Detective Agency*, 346 F.2d 897, 900 (8th Cir. 1965); *Frito Company Western Division* v. *N.L.R.B.*, 330 F.2d 458, 465 (9th Cir. 1964); *Consolidated Edison Co.* v. *Labor Board*, 305 U.S. 197 (1938); *N.L.R.B.* v. *Puerto Rico Rayon Mills, Inc.*, 293 F.2d 941, 948 (1st Cir. 1961); *N.L.R.B.* v. *Local 691, International Bro. of Team., Etc.*, 270 F.2d 696, 699 (7th Cir. 1959);

---

[5] Section 9(1)(a) of the Act provides that:

"(1) Charges of the existence of an unfair labor practice may be submitted to the Board for its action in the manner and for the purposes provided by this subchapter.

"(a) Whenever it is charged that any person, employer, or labor organization has engaged in or is engaging in any unfair labor practice, the Board, or any agent or agency designated by the Board for such purposes, shall have the power to investigate such charge and cause to be served upon such person, employer or labor organization a complaint in the name of the Board stating the charges in that respect, and containing a notice of hearing before the Board or a member thereof, or before a designated agent or agency, at a place therein fixed, not less than five (5) days after service of the said complaint. Any such complaint may be amended by the member of the Board, agent or agency conducting the hearing, or by the Board, in its discretion, at any time prior to the issuance of an order based thereon. The person so complained of shall have the right to file an answer to the original or amended complaint and to appear in person or otherwise and give testimony at the time and place fixed in the notice of hearing. All allegations of any complaint so issued which are not denied shall be deemed admitted and the Board may thereupon make findings of fact and conclusions of law with respect to such undenied portions of the complaint. In the discretion of the member of the Board, agent, or the agency conducting the hearing, or of the Board, any other person may be allowed to intervene and to present testimony in said proceedings. In any such proceedings the rules of evidence prevailing in the courts of law or equity need not be controlling."

*National Labor Relations Bd.* v. *Roure-Dupont Mfg.,* 199 F.2d 631, 633 (2d Cir. 1952).

"8. The Board erred in deciding that respondent herein violated § 8(1)(c) of the Puerto Rico Labor Relations Act, despite the fact that there is a finding of fact of the Trial Examiner undisturbed by the Board, to the effect that the lawyers of said Board did not prove in the hearing that the discharges actually resulted in discouraging its employees from membership in the Union."

We said in *Labor Relations Board* v. *Banker's Club of P.R., Inc.,* 94 P.R.R. 573, 581 (1967), that:

"It is true that expressions of opposition to an outside Union and the indication of preference for another, by themselves, do not constitute acts of coercion or in other way constitute a violation of § 8(1)(a) of the Act. *Labor Board* v. *Virginia Power Co.,* 314 U.S. 469, 477 (1941). But they might constitute such violation when these acts are considered in conjunction with others showing the purpose of the employer of supporting and dominating a union. *National Labor Rel. Bd.* v. *Wagner Iron Works,* [220 F.2d 126]. The act of questioning employees about union activities does not constitute a violation of said statute either. *Salinas Valley Broadcasting Corporation* v. *N.L.R.B.,* 334 F.2d 604 (9th Cir. 1964). But this activity violates the statute in question when it is accompanied by threats of reprisals, express or implied, as it appears from the evidence in this case. *National Labor Relations Board* v. *Superior Co.,* 199 F.2d 39 (6th Cir. 1952)." Other citations omitted.

See, also: *Labor Board* v. *Brown,* 380 U.S. 278, 286 (1965); *Radio Officers* v. *Labor Board,* 347 U.S. 17, 51 (1954).[6]

---

[6] Paragraph (a) of § 8(1) of our Act forbids not only to encourage or discourage membership in any labor organization, but also the attempt to encourage or discourage it. Therefore, when the complaint is based upon an attempt to encourage membership in any labor organization, the evidence must show that such attempt was performed. In that sense, it must be considered explained what we said in *Banker's Club, supra,* in which there was no need to make any pronouncement with respect to the unfair practice of attempting to encourage membership in any labor organization.

■ In the case at bar respondent used the interrogatories even to the point it is prohibited by the federal doctrine, since it performed them with threats of reprisals, express or implied, for the favorers of the Union. The Board found that as soon as respondent's management learned about the union activity, it initiated a series of activities designed to coerce and to frighten the employees in the exercise of their right to organize into a union of their own choosing. The manager questioned several employees, he offered money for the information he requested, he threatened to discharge those who had the cards, he asked an employee how he was going to vote. These interrogatories, among other antiunion behavior of the employer, necessarily interfered or attempted to interfere with, restrain or exercise coercion upon his employees in the exercise of the rights guaranteed by the Act.

In view of the foregoing, we conclude that the Board did not err in deciding that respondent violated § 8 (1) (a) of the Puerto Rico Labor Relations Act, 29 L.P.R.A. § 69 (1) (a), as a result of its interrogatories and threats to the employees.

"9. The Board erred in failing to limit the relief in favor of the employees discharged to the payment of a sum equal to that which they normally would have earned from the time they ceased working until the date on which respondent ended its operation of the bar and restaurant, despite the fact that the Trial Examiner made a finding of fact, adopted by the Board, that there is a concessionaire which operates respondent's bar and restaurant facilities since December 1, 1967, and that 'the operation of the bar and restaurant by means of concessionaires has been usual since the beginning.' "

Respondent maintains that its obligation to compensate the discharged employees should have been limited to November 30, 1967, because from that date on another company has taken charge of its restaurant and bar facilities, the contracting of concessionaires being the usual thing as far as said operation is concerned; that it was so concluded by the Trial Examiner in his report.

It is true that the usual thing was that the operation in question was performed by means of concessionaires. It is not less true that from the record it appears that (1) respondent used to see that the concessionaires would keep the employees of the business, with the result that among the employees there was one with 17 years of service, another with 10 years, another with 7 years, and others with 6 years of service; (2) that the company which took charge of the operation as of December 1, 1967, did it with full knowledge of the existing union conflict; and that (3) respondent continues operating a part of the business.

The Labor Relations Act authorizes the Board to require the employer, which in its opinion has been engaged in an unfair labor practice, to cease and desist from the same and to take such affirmative action as shall effectuate the purposes of the Act, including, but not limited, to the reinstatement of employees with or without back pay. 29 L.P.R.A. § 70 (1) (b).

At the threshold we must determine whether the present concessionaire is liable in some way for respondent's unfair labor practices, particularly for the reinstatement with back pay of the discharged employees. Said assignee was not included in the original complaint nor subsequently by way of the latter's amendment. The established ruling of making the order against respondent applicable to its officers, agents, successors, and assigns, was followed. Although said ruling is correct, the Board's order may be enforced upon one of the employer's successors or assigns, only when the business was transferred to him "as a means of evading the order or for other reasons." Its liability depends on its relations and behavior. *Regal Knitwear Co.* v. *Board*, 324 U.S. 9, 14 (1945).

In *United States Pipe & Foundry Co.* v. *N.L.R.B.*, 398 F.2d 544 (5th Cir. 1968), an employer which had purchased a business was required to show cause why it should not be held liable for some unfair labor practices in which the for-

mer employer had been engaged against which employer a decree to reinstate certain employees had been issued. The court concluded that the employer who had purchased had ample notice of the unfair practices proceeding against the predecessor employer. Then a proceeding was instituted against said purchaser and a hearing of its case was held. The court determined that since the purchaser received notice of the proceeding against it, answered, and had the opportunity to be heard, it was not denied due process of law. When there is not sufficient nexus between the original employer and the purchaser of its business by way of a disguised continuance, or an alter ego status, or through a concert or participation to evade the original order, the employer which has purchased may not be held liable for the former employer's unfair practices. In view of the fact that the purchaser of the business continued operating the latter in the same manner and with the same employees, and that the president of the vendor enterprise became plant manager of the employer which had purchased, the court concluded that the Board had power, under the circumstances of the case, to require the employer which had purchased to reinstate the discharged employees. No question arose as to back pay, since the former employer paid it to the date of sale of the business. *N.L.R.B.* v. *Birdsall-Stockdale Motor Co.*, 208 F.2d 234 (10th Cir. 1953).

In *National Labor Relations Bd.* v. *New Madrid Mfg. Co.*, 215 F.2d 908 (8th Cir. 1964), it was a question of an employer which had a branch plant, which branch plant was shut down after charges were filed against the employer for unfair labor practices committed in said branch. Subsequently, the employer sold the equipment of the branch to the person who managed the same, and the latter opened up a new plant in another city of the same state with the equipment he purchased from his employer. The original charge was amended in order to include the new owner of the equipment and the latter did not answer the complaint nor object to the Board's

petition requesting the court to decree the enforcement of the order issued by the Board. Only the original employer objected to it. The court concluded that the original employer would be liable only for unfair labor practices committed to the date on which the branch plant shut down, if there was a bona fide sale of the plant; and it could not be ordered to reinstate employees in a plant which had been closed or sold to a third person upon which it exerted no control; or be bound to back pay, but to the date on which it closed or sold the plant.

As to the successor's liability it was said that for the mere fact of purchasing the plant it was not bound to answer for his predecessor's acts; that each situation must be rationally and reasonably weighed; that in order to impose remedial responsibility upon it for the predecessor's acts, there must be the equivalence of a voluntary acceptance of responsibility, as for instance, if it repeats the same unfair practices in which its predecessor was engaged.

In *Gibbs Shipyards, Inc.* v. *N.L.R.B.*, 333 F.2d 459 (5th Cir. 1964), Gibbs sold his plant to G.S.I. An executive committee was formed nominated by G.S.I. to continue operating the plant until the sale be consummated. During the period between the sale and its consummation, certain unfair practices were committed. The National Board found that G.S.I. was liable for the unfair practices committed since the committee was formed until the sale was consummated, whether because it controlled Gibbs, or whether because Gibbs was its successor. Consequently, the Board ordered and held that Gibbs was jointly liable for the pay to date of sale. The Board also ordered G.S.I. to cease and desist from all unfair labor practices committed, plus any other manner of interfering with employees rights under the act.

The Court of Appeals found that the practical control by G.S.I. upon Gibbs before the sale was consummated was sufficient to hold G.S.I. liable without reference to the succes-

sor theory, but that the order was too broad because although there was sufficient continuity of interest to bind G.S.I. to correct particular injustices committed by Gibbs, there was no ground to charge it with the previous transgressions of the latter.

The factors which have been considered in order to hold an entity liable for the unfair practices committed by another are varied. A mere change in name or in apparent control does not relieve from liability. *Southport Co.* v. *N.L.R.B.*, 315 U.S. 100 (1942). If the successor is an instrumentality through which it is sought to evade an order, or if it participates in the unfair practices, it is liable too. *Regal Knitwear Co.* v. *Board, supra.* When the operations of two corporations are integrated and the same entity controls the labor policies of both corporations, the latter may be considered as joint employers. *National Labor Relations Board* v. *National Garment Co.*, 166 F.2d 233 (8th Cir. 1948) ; *National Labor Relations Board* v. *National Shoes*, 208 F.2d 688 (2d Cir. 1953) ; *N.L.R.B.* v. *Gibraltar Industries, Inc.*, 307 F.2d 428 (4th Cir. 1962). On the other hand, if there is a bona fide sale of the enterprise, the successor is not liable for the unfair practices of its predecessor. *National Labor Rel. Bd.* v. *Birdsall-Stockdale Motor Co., supra; N.L.R.B.* v. *Lunder Shoe Corp.*, 211 F.2d 284 (1st Cir. 1934).

In *N.L.R.B.* v. *Tempest Shirt Manufacturing Company*, 285 F.2d 1 (5th Cir. 1960), it was decided that Pascal Corporation was a successor employer of Tempest Shirt Manufacturing Co., against which a decree had been issued requiring it to reinstate three employees in their position with back pay. The order was directed against Tempest, its officers, agents, successors, and assigns. Therefore, the court decided that Pascal Corporation had incurred in civil contempt in failing to comply with said decree.

In this case the evidence showed that Tempest was owned by another corporation which shares were equally owned by

Pascal and Kauffman. When disagreement arose between them, Pascal obtained the control of Tempest's resources. This severance occurred before issuance of the aforesaid decree directed against Tempest, its successors and assigns. To receive Tempest's resources, Pascal formed the Pascal Corporation which continued Tempest's business. The latter was not dissolved, but lacks physical or financial assets and is owned by another corporation. The Trial Examiner's report determined that Pascal had engaged in unfair labor practices while he was president of Tempest, and said report was adopted five months after Pascal and Kauffman severed their business relations. The court concluded that the crucial question in determining successorship is one of continuity, whether the industry remained essentially the same after transfer of ownership. The court found that there was such continuity because there was no substantial business change; the same products were made using the same machinery and equipment, and the same supervisors and employees were retained; by purchase, Pascal had the same accounts receivable and ownership and control of policy remained in the same individuals. Therefore, it was immaterial that the transfer of Tempest's manufacturing business to Pascal Corporation was a bona fide business transaction "carried out at arm's length."

[8-█   We have then, that in order to hold an employer liable for the failure to perform an order to cease and desist from unfair labor practices charged against the predecessor employer, it is necessary to establish that the second employer is in effect a "successor" of the first, that is to say, that the transaction by virtue of which the second employer comes into possession of the business is disguised or constitutes a concert or participation for the purpose of evading the order in question, or that the second employer is proved to be an alter ego of the first. If the second employer acquired the business in a bona fide manner, he may not be held liable unless, as in

*Tempest, supra,* the evidence shows a state of continuity in the operation which warrants concluding that, as a matter of fact, the original enterprise essentially continued in charge of the operation, notwithstanding the bona fide transaction. Besides, it is a requirement of the due process of law that the alleged successor be served notice and that he be given the opportunity to be heard and to allege some possible defense and offer evidence in support of the same, except when the evidence shows that the circumstances of the case are similar to the ones which prevailed in *Tempest, supra.*

■ In the case at bar the assignee was not served notice and hearing was not held, nor is there any evidence whatsoever as to disguise or evasion, or that the assignee was an alter ego or a continuance of the respondent. Hence, we conclude that the order in question may not be made applicable to the assignee and that the liability of reinstatement and back pay must fall exclusively upon the respondent, since the Board informed that the latter continues operating part of its business[7] until said reinstatement is performed in its entirety.

Judgment will be rendered enforcing the Board's order No. D 490 of April 3, 1968, modified in the point previously indicated.

---

[7] This conclusion seems to be based upon the fact that the contract by virtue of which the concessionaire Los Chavales, Inc., took charge of the operation of respondent's restaurant did not include the night shift, since respondent's officer, Mr. José A. Suro, testified that said concessionaire was going to start later operating the aforesaid night shift.