**NATIONAL LABOR RELATIONS BOARD**
**v. ARMATO et al.**
**No. 10691.**

United States Court of Appeals
Seventh Circuit.

Nov. 19, 1952.

George J. Bott, Gen. Counsel, David P. Findling, Associate Gen. Counsel, A. Norman Somers, Asst. Gen. Counsel, Thomas J. McDermott, Dominick L. Manoli, Attys.,

National Labor Relations Board, Washington, D. C., for petitioner.

O. S. Hoebreckx and Clark M. Robertson, Robertson & Hoebreckx, Milwaukee, Wis., for respondents.

Before MAJOR, Chief Judge, and LINDLEY and SWAIM, Circuit Judges.

LINDLEY, Circuit Judge.

The National Labor Relations Board, pursuant to the provisions of the Labor Management Relations Act, 1947, 29 U.S.C.A. § 141 et seq., seeks enforcement of its order issued January 5, 1952, against Albert Armato and Wire & Sheet Metal Specialty Co. It is admitted that we have jurisdiction. 29 U.S.C.A. § 160(e).

Upon review of the whole record we find that the evidence supports the following facts. On October 7, 1949, one Krantz was sole proprietor of the Krantz Wire & Mfg. Co., engaged in the manufacture and sale of metal products. On that date, following a consent election, District No. 10, International Association of Machinists was certified by the Board as the exclusive bargaining representative of Krantz' employees comprising a unit consisting of some 25 production and maintenance employees. Krantz and the certified union subsequently entered into a collective bargaining agreement to run for a period of one year from October 31, 1949, which provided, inter alia, for a union shop, a provision which became effective December 9, 1949.

On July 9, 1950, Krantz, for bona fide business reasons, leased the building, machinery and fixtures to Armato for a term of five years. By a supplemental agreement, Armato purchased the raw materials, goods in process and finished products. On July 21, 1950, Krantz notified his employees that he had disposed of the business and was ceasing operations and that Armato would do his own hiring. At the latter's request Krantz recommended six employees to finish up the work in process. Armato then asked these six to report to work on July 24, 1950. Armato commenced operation of the plant on July 24, employing the six Krantz employees. In addition he retained Krantz and Krantz' son, as supervisory employees. In August, Armato rehired two more former employees.

During the first week in August plans were laid by Armato and one Bramucci for formation of the respondent corporation, for the purpose of taking over the business. On August 24, 1950, the corporation was formed, Armato and Bramucci each owning 25% of the capital stock. Armato became a director and officer. After its formation, the corporation continued to work on Krantz' orders, filling most of them; continued to engage in substantially the same type of manufacturing as had Krantz, and kept most of the latter's customers, adding some new ones. The corporation, likewise, retained Krantz and his son in supervisory roles. The Krantz employees who had been rehired by Armato were retained by the corporation and continued to perform essentially the same work they had formerly done. By September 1, 1950 the corporation had a force of 25, composed of eight former Krantz employees and 17 newcomers.

At the time Armato took over the operation, he was informed of the union's status in the plant and of the existence of the collective bargaining agreement. Upon learning of the change in ownership, the union sought a conference with him with respect to rehiring additional employees, compliance with the collective bargaining agreement, or, in the alternative, execution of a new agreement. Armato refused to meet with the employees' representatives. Upon its formation the corporate respondent confirmed all action taken by Armato while he was sole proprietor of the business, and in March, 1950, a general wage increase of 10 cents per hour was granted the employees without prior consultation or bargaining with the union.

Upon essentially these facts, the corporation has been ordered to cease and desist from refusing to bargain with the union and from in any manner interfering with the efforts of the latter to bargain with it on behalf of the employees, to bargain with the union upon request, and to post the customary notices. In addition, the order requires Armato to cease and desist from interfering with the efforts

of the union to bargain with the corporation. He, too, is required to post the usual notices.

■ The crucial question presented is whether the certification of the union, issued by the Board during Krantz' ownership of the business, continued to be binding on Armato and the subsequently formed corporation. The very nature of a certification of a union as bargaining agent for a group of employees impels the conclusion that a mere change in employers does not operate to destroy the effectiveness of the certification. It is an official pronouncement by the Board that a majority of the employees in a given work unit desire that a particular organization represent them in their dealings with their employer. There is no reason to believe that the employees will change their attitude merely because the identity of their employer has changed.

■ On the other hand the Board and the courts have recognized that certain changes in conditions may serve to raise doubts as to the wisdom of continued certification. Thus it has been authoritatively held that certification is effective for only a reasonable period of time (usually one year), in the absence of additional acts of confirmation on the part of the employees. See N. L. R. B. v. Gatke Corp., 7 Cir., 162 F.2d 252; N. L. R. B. v. Geraldine Novelty Co., 2 Cir., 173 F.2d 14. This doctrine gives recognition to the fact that, during the passage of such a period of time, personnel variations and familiarity with the particular union and its policies may bring about a different sentiment on the part of a majority of the employees. So too, a change in the nature of the industry has been recognized as sound ground for questioning continued certification. N. L. R. B. v. Blair Quarries, Inc., 4 Cir., 152 F.2d 25. This is the result of the logical assumption that when an employer undertakes a new operation there may well be a consequent change in the nature of the work required of the employees resulting in differences in their working condition problems. Thus the employees may feel that they can be better served by another employee organization.

■ Neither of these factors is present here. The certification had been in effect approximately 10 months, when Armato refused to bargain. This period of time, in the absence of controverting circumstances, is not unreasonable. The nature of the industry had not changed. Krantz' customers were retained; his work-in-process was completed and operations of a similar nature had been begun. While the work force was considerably reduced, that factor standing alone did not justify the refusal to bargain. Those employees of Armato in the unit defined in the certification were all former Krantz employees and members of the union. The fact that they found themselves fewer in number than before warrants no implication that they no longer desired the union to represent them. Indeed there is no proof of any intervening fact weakening in any way the effectiveness of the bargaining agreement. Therefore, it was improper for Armato to refuse to bargain with the union.

■ Upon the formation of the corporation it ratified and approved all action taken by Armato during his tenure as sole proprietor of the business. No change of attitude on its part with respect to the union is shown. The rationale applied to Armato and his obligation to recognize the union as the bargaining agent of his employees applies with equal vigor to the corporation. Its refusal, therefore, was likewise improper. Nor is this conclusion impinged upon by the fact that respondent's employee force increased to twenty-five, seventeen of whom were newcomers, for this change in personnel took place after the unfair labor practice occurred. Franks Bros. Co. v. N. L. R. B., 1944, 321 U.S. 702, 64 S.Ct. 817, 88 L.Ed. 1020.

■ Armato complains that he should not have been included in the order, inasmuch as he is no longer the employer. In view of his close relationship with the corporate entity, his prior activities as this industry's sole proprietor and his unquestioned influence in its affairs thereafter, we think it was entirely proper that the Board order him to refrain from interfering with the employees' right to bargain collectively.

The portion of the order seeking to restrain the corporation from future interference is premised on the unilateral grant of a wage increase to the employees without prior consultation with or submission to the union. Cf. N. L. R. B. v. Bradley Washfountain Co., 7 Cir., 192 F.2d 144. Such conduct falls within the prohibitions of the Act. Medo Photo Supply Corp. v. N. L. R. B., 321 U.S. 678, 64 S.Ct. 830, 88 L.Ed. 1007.

Finally respondents contend that they were found guilty of a charge not contained in the complaint. They correctly assert that the complaint was premised on the ground that Krantz, Armato and the corporation were co-employers and that the transfer of ownership was merely a colorable one in order to avoid Krantz' obligation to the union. However, early in the proceedings, the Board's counsel indicated that he was also proceeding, in the alternative, on the ground that, even if the transfers were bona fide, the certification of the union was binding on Armato and the corporation as successors. Respondents were fully apprised of this position. They advanced argument to meet it and, as is demonstrated by the record, in all ways received a fair and full hearing. See N. L. R. B. v. Swift & Co., 7 Cir., 108 F.2d 988; N. L. R. B. v. Piqua Munising Wood Products Co., 6 Cir., 109 F.2d 552.

An order of enforcement will enter.