**PROCTER & GAMBLE INDEPENDENT UNION OF PORT IVORY, N. Y.,**
Plaintiff,

v.

**The PROCTER & GAMBLE MFG. CO.,**
Defendant.

No. 61-C-262.

United States District Court
E. D. New York.

May 14, 1964.

Garbarini, Scher, DeCicco & Berardino, New York City, for plaintiff; Sabino J. Berardino, New York City, and Martin Loftus, Newark, N. J., of counsel.

Battle, Fowler, Stokes & Kheel, New York City, Dinsmore, Shohl, Barrett, Coates & Deupree, Cincinnati, Ohio, for defendant; Samuel R. Pierce, New York City, Jack G. Evans, Cincinnati, Ohio, of counsel.

RAYFIEL, District Judge.

The plaintiff, a labor union, brings this action under Section 301 of the Labor Management Relations Act (Section 185 of Title 29 U.S.C.) to compel the defendant to arbitrate two disputes or

grievances pursuant to a collective bargaining agreement dated June 23, 1960. The disputes involved Robert Spittel and Frank Wilson, employees of the defendant.

My colleague, Judge Bartels, granted the plaintiff's motion for summary judgment requiring the defendant to arbitrate the Wilson dispute and denied the motion as to the Spittel dispute. See 195 F.Supp. 64. The defendant appealed from the decision in Wilson, which was affirmed. See 298 F.2d 647. The plaintiff did not appeal from the order denying its motion in Spittel and that matter was tried before me.

These are the facts:

On January 22, 1950 Procter & Gamble Independent Union of Port Ivory, New York, was certified by the National Labor Relations Board (the Board) as the collective bargaining representative for the defendant's production and maintenance employees at its factory at Port Ivory, in Staten Island, Richmond County, New York. This unit consisted of all production and maintenance employees, including factory clericals, laboratory employees, and fire inspectors. Excluded were office clerical employees, who composed a separate unit represented by the same union and recognized by the defendant.

Subsequent to the certification separate collective bargaining agreements, identical except for the employees covered thereby, were entered into for each of the said units. The last of those was entered into on June 23, 1960. Since they are identical in terms I shall refer to both of them as "the contract."

Spittel, employed as a factory clerical employee, was also active in the affairs of the union as a shop steward. In 1960 a vacancy occurred for the position of cost clerk, a category higher than "factory clerical", the one in which Spittel was then employed. Under the terms of the contract all employees who had the necessary seniority and qualifications were eligible to "bid" on this job. Spittel was one of the bidders and was selected as the employee with most seniority among those qualified for the position.

He was assigned to the new position on September 8, 1960, but for some five weeks thereafter was not given the increase in salary to the minimum rate of pay for that position because, the defendant contended, he required training and supervision during that period to qualify him to carry out his duties properly. In support of its contention it cited Article III, Section 5, paragraph 3 of the contract which provides that:

"Any employee taking a new job classified at a higher rate than his former job shall receive at least the minimum job rate for the new job *when he is able to handle the job*. An employee will be conclusively presumed to be able to handle the job when he is able to perform, and does perform, all the duties of the job satisfactorily by himself without special supervision." (Emphasis mine).

Upon the employer's failure to pay him the minimum rate of pay for his new position Spittel filed a grievance for "Violation of past practices and agreements, and discrimination against a union official."

The grievance procedure is outlined in Article XI of the contract. A grievance is therein defined as "any difference between the employer and union, or employee or employees covered by this agreement, as to any matter involving the interpretation or application of any provision of the agreement (or any matter directly affecting the employee in respect to hours of work, wages, or conditions of employment)." It provides for three steps involving negotiation between representatives of the union and the employer, and for arbitration as the fourth step if the grievance has not been settled in the prior proceedings. The contract contains a "no strike" provision, prohibiting the employees from conducting a work stoppage or slowdown etc.

The Spittel grievance was processed through the first three steps without success. The disagreement is summarized in the résumé of the third step contained in defendant's Exhibit "E," en-

titled "SUMMARY OF MEETING HELD OCTOBER 11, 1960 BETWEEN THE MANAGEMENT AND EXECUTIVE BOARD OF THE *PROCTER & GAMBLE INDEPENDENT UNION OF PORT IVORY*" as follows:

"*Nature of Grievance:*—Violation of past practices and agreements and discrimination against a Union Official.

"*Company Answer:* There was no discrimination against a Union official and no violation of the Contract. It is correct that other people have been transferred into the same job at minimum rate.

"*Union's Position:* The Union feels that this employee should be treated as all others were in the past. We feel it is a violation of past practice and agreements and that it is discrimination against a Union official."

The Union, in a letter dated November 17, 1960, demanded arbitration of the grievance. Pursuant to the terms of the contract it appointed its president, Robert Reed, as an arbitrator, and the defendant appointed Robert J. Eichner, one of its plant managers, as its arbitrator. The contract provides that the two arbitrators thus named select a third arbitrator. They met on two occasions but failed to select a third arbitrator because Mr. Eichner insisted that there first be a determination of the issues to be arbitrated.

It was the position of the union that it had the right to arbitration of its grievance under the language stated by it in the first of the four-step grievance procedure, namely, "Violation of past practices and agreements, and discrimination against a Union official." The employer, on the other hand, contended that it was obliged to arbitrate only such grievances as involved the interpretation or application of a provision of the contract, and that it had never agreed to arbitrate "past practices and agreements." The defendant made clear its position in the matter in a letter to the union, dated February 1, 1961, marked plaintiff's Exhibit "4", wherein it stated its reasons for revoking its designation of Mr. Eichner as an arbitrator. On April 7, 1961 this action was commenced.

Prior to its commencement, and early in 1960, the union made application to the Board of Standards and Appeals of the Department of Labor of the State of New York for the approval of its proposed certificate of incorporation as a membership corporation under the name Procter & Gamble Independent Union of Port Ivory, Inc. After a hearing thereon held on March 31, 1960 the certificate was approved and on August 1, 1960 it was filed in the office of the New York Secretary of State. On June 4, 1962 the union filed a certificate with the said Secretary of State changing its name from Procter & Gamble Independent Union of Port Ivory, Inc. to Independent Oil & Chemical Workers, Inc., its present name.

On March 18, 1963 the union made application to the Board to amend its certification as bargaining representative for the production and maintenance workers to reflect those changes and to substitute the name Independent Oil & Chemical Workers, Inc., for the name Procter & Gamble Independent Union of Port Ivory, Inc. on the certification. This application was unsuccessfully opposed by the defendant and on August 14, 1963 the certification was amended accordingly. See plaintiff's Exhibit "3".

The facts concerning the incorporation of the union were brought to the attention of my colleague, Judge Dooling, during the course of the pre-trial conference held herein, and his pre-trial order, dated May 14, 1963, directed the plaintiff to amend its complaint to allege its incorporation and succession in interest to the unincorporated union, etc., and directed the defendant to amend its answer to respond thereto. Pursuant to such order the plaintiff served and filed an amended complaint and the defendant filed an amended answer.

At the trial the plaintiff contended that the Spittel grievance, predicated on the defendant's alleged violation of the provisions of the contract, particularly Article VII thereof, prohibiting discrim-

504

ination against an employee by reason of union activity, was arbitrable, while the defendant argued (1) that the language of the grievance, "Violation of past practices and agreements and discrimination against a Union official," included matters outside the scope of "interpretation and application" of the provisions of the contract, as restricted by Article XI of Step 4 thereof, and (2) that the plaintiff, unincorporated association lacked capacity to sue, and that the membership corporation, the substituted plaintiff, not being a party to the contract, had no capacity to sue under the agreement.

■ Adverting to the defendant's contentions in inverse order, its second contention is, in my opinion, wholly without merit. Those issues were raised before the Board in the union's application to amend its certification by the substitution of the membership corporation (Independent Oil & Chemical Workers, Inc.) for the unincorporated union (Procter & Gamble Independent Union of Port Ivory, New York.) It was the union's position before the Board, as it was at the trial, that after the incorporation it continued "to function with the same officers, membership, constitution, and by-laws; that its purposes after incorporation continued to be the same as prior thereto;". (See plaintiff's Exhibit "3" in evidence). The defendant, in opposing the application to the Board for such amendment, raised "issues, *inter alia*, as to (1) the validity of the Union's incorporation; (2) whether the corporate labor organization is, in fact, the successor of the certified union; and (3) whether the certified unit is still appropriate." (See plaintiff's Exhibit "3" supra). After a hearing before one of its examiners the Board found: "(1) that any questions concerning the validity of the Union's incorporation under the laws of the State of New York are immaterial to the issues involved; (2) that the Union has operated, since its incorporation, without change in its structure or functions; that its officers, membership, constitution, and by-laws

have remained the same, and, therefore that the corporate labor organization is the successor to the certified Union; and (3) that there is no evidence to indicate that the originally certified unit is no longer appropriate." (See plaintiff's Exhibit "3" supra). It therefore granted the application to amend the certification by substituting the name Independent Oil and Chemical Workers, Inc., for the name Procter & Gamble Independent Union of Port Ivory, New York.

The evidence before me sustains the Board's findings and I accordingly find that the Independent Oil & Chemical Workers, Inc. is the proper party in interest, is properly substituted as the plaintiff herein, and has the right to sue as the successor of the unincorporated union named in the contract.

■ The defendant's first contention rests on the fact that the Spittel grievance contains the words "Violations of past practices and agreements." The defendant has attempted to prove by its witnesses that the union relied on this part of the grievance alone, without relation to the collective bargaining agreement itself. They testified that at their several conferences the union's representatives had refused to point out any *specific* section of the contract on which they relied.

I disagree. It was apparent from the testimony that from the very beginning of the dispute it was the union's position that the defendant's failure and refusal to give Spittel the minimum rate of pay immediately upon his promotion to cost clerk was due to his union activity, and was discriminatory since others had received the minimum rate immediately upon their transfer to a new position. The union made this clear in its summary of the meeting held on October 11, 1960 between management and the union's executive board, which was the third step in the grievance procedure provided for in Article XI of the contract. It stated, "The Union feels that this employee should be treated *as all others were in the past*. We feel it is a violation of past practice and agreements

and that it (failure to give Spittel the minimum) *is discrimination against a Union official."* (Matter in parenthesis and emphasis added).

I am not now passing on the *merits* of the union's contention. It may very well be that the defendant will be able to prove at arbitration that there was no discrimination against Spittel for union activity, that he *needed* supervision and assistance, and, therefore, that pursuant to Article III Section 5 Paragraph 3 of the contract he was not entitled to receive the minimum rate during the period of his training. What I *am* called upon to decide is whether the grievance should have been arbitrated. I find that it should have been.

The most recent expression of our Court of Appeals on the subject which I have been able to find is the case of Local 12298 District 50, United Mine Workers of America, etc. v. Bridgeport Gas Company, 2 Cir., 328 F.2d 381. In that case the collective bargaining agreement contained a multi-step grievance procedure culminating in arbitration, as did the case at bar. The defendant there refused to arbitrate the question of the posting of notices of a vacancy which had occurred on the ground that there was insufficient work to justify the filling of the vacancy.

In reversing the District Court and directing the arbitration Judge Smith cited Textile Workers Union of America v. Lincoln Mills, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972, which held that Section 301(a) of the Labor Management Relations Act, 29 U.S.C. 185(a),

> "permitted the federal courts to enforce grievance arbitration provisions in collective agreements, and that the federal courts were to be guided by the national labor policy of promoting industrial stabilization through adherence to the terms of the collective bargaining agreement."

Judge Smith then went on to say:

> "Three years later, in United Steelworkers of America, A.F.L.-C.I.O.

v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582, 80 S.Ct. 1347, 1352–1353, 4 L.Ed.2d 1409 (1960), the Supreme Court announced that '[t]o be consistent with congressional policy in favor of settlement of disputes by the parties through the machinery of arbitration, the judicial inquiry under § 301 must be strictly confined to the question whether the reluctant party did agree to arbitrate the grievance or did agree to give the arbitrator power to make the award he made. *An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.'*

> *"Thus, the court's role is confined to ascertaining whether the party seeking to compel arbitration is making a claim which on its face is covered by the language of the grievance arbitration clause.* We hold that the broad language of this arbitration clause can fairly be interpreted to cover this dispute, *particularly since any doubts are to be resolved in favor of arbitrability. The parties have agreed to submit to the arbitrator all unsettled grievances relating to the meaning and application of the collective agreement with respect to pay rates, wages, hours, and 'other conditions of employment.' We think it clear that the posting of vacancies and the right of employees to apply to fill them can be encompassed within the term 'conditions of employment.'* Since the union contends that Sections 7 and 8 of Article II have been contravened by the company's conduct, and the company contends that these sections are inapplicable, *there is plainly a dispute about the meaning and application of the collective agreement with respect to a condition of employment.*

"One question remains. Did the language of Section 5 of Article I, a management functions clause, which provides in pertinent part that 'the right to relieve employees from duty because of lack of work is vested exclusively in the Company * * *,' exclude disputes about the existence of vacancies from those disputes which must be submitted to arbitration? *In order to exclude from arbitration a dispute which on its face appears to be encompassed by the arbitration clause, the collective agreement must contain a clear and unambiguous exclusionary clause or some other term 'that indicates beyond peradventure of doubt that a grievance * * * is not intended to be covered by the grievance and arbitration procedure set forth in the agreement.'* Procter & Gamble Independent Union of Port Ivory, N. Y. v. Procter & Gamble Mfg. Co., 298 F.2d 644, 646 (2 Cir. 1962). The management functions clause in this case says nothing about vacancies being improper subjects for arbitration; it does not even say that relieving employees from duty for lack of work shall be excluded from arbitration. Even if one reads 'exclusively' as evidencing an intention to qualify the arbitration clause, there is a difference between relieving a working employee from duty and refusing to fill a vacancy. It may be that the power to refuse to fill a vacancy can be implied from the power to relieve an employee from duty, *but that is a question as to the merits of the grievance and must be left to the arbitrator. Moreover, the processing of even frivolous claims may have a therapeutic value in preserving industrial peace.* United Steelworkers of America v. American Mfg. Co., 363 U.S. 564, 568, 80 S.Ct. 1363, 4 L.Ed.2d 1432 (1960). The party claiming exclusion has a heavy burden, Livingston v. John Wiley & Sons, Inc., 313 F.2d 52, 60 (2 Cir. 1963). Here the company has presented no 'forceful evidence of a purpose to exclude the claim from arbitration,' and we decline to become 'entangled in the construction of the substantive provisions of a labor agreement, even through the back door of interpreting the arbitration clause, when the alternative is to utilize the services of an arbitrator.' United Steelworkers of America, A.F.L.-C.I.O. v. Warrior & Gulf Nav. Co., supra, 363 U.S. at 585 [80 S.Ct. [1347] at 1354, 4 L. Ed.2d 1409]." (Emphasis added).

The reasoning in that case is applicable to the case at bar. The language of the grievance herein is encompassed in the language of Article XI of the contract herein, which contains language as broad as that in Local 12298, District 50, United Mine Workers of America v. Bridgeport Gas Company, supra.

Judgment is rendered in favor of the plaintiff.

Submit proposed findings of fact and conclusions of law in conformity herewith within fifteen days from date hereof.